IN THE

# United States Court of Appeals

## FOR THE FIFTH CIRCUIT

◆◆

KAYLEE LARTIGUE,

*Plaintiff-Appellant,*

—v.—

NORTHSIDE INDEPENDENT SCHOOL DISTRICT,

*Defendant-Appellee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS

**BRIEF FOR *AMICUS CURIAE* COUNCIL OF PARENT ATTORNEYS
AND ADVOCATES, INC. IN SUPPORT OF PLAINTIFF-APPELLANT**

ELLEN MARJORIE SAIDEMAN
LAW OFFICE OF ELLEN SAIDEMAN
7 Henry Drive
Barrington, Rhode Island 02806
(401) 258-7276

SELENE ALMAZAN-ALTOBELLI
COUNCIL OF PARENT ATTORNEYS
   AND ADVOCATES
P.O. Box 6767
Towson, Maryland 21285
(844) 426-7224

*Attorneys for Amicus Curiae*

UNITED STATES COURT OF
APPEALS FIFTH CIRCUIT

Kaylee Lartigue
 *Plaintiffs-Appellants,*
v.             Case No. 22-50854
Northside Independent School District
 *Defendant-Appellee.*

## <u>CERTIFICATE OF INTERESTED PERSONS</u>

The undersigned counsel of record certify that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

*Amicus Curiae* has no parent corporation, subsidiaries or affiliates that has issued shares to the public.

*Amicus Curiae* has no direct or indirect interest associated with the parties to this matter, or to their attorneys or counsel, though it and its members have a general interest in the issue and outcome of the case.  Attorneys for Appellants and other putative *amicus* are independent members of COPAA, an organization which opens membership to attorneys who are interested in and/or represent parents and children with disabilities. COPAA has not contributed in any way to the Appellants or their pursuit of this matter.

*Amicus Curiae* adopts the statements of the Appellee and Appellant

concerning the parties, trial judge(s), persons, firms, partnerships or corporations who have an interest in the outcome of the case.

Pursuant to 5th Cir. R. 26.1.1, as this brief is filed by *amicus* the following is a list of all entities known to have an interest in the outcome of this appeal which has been "omitted from the certificate contained in the first brief filed and in any other brief that has been filed":

*Counsel for Appellants:* Roman Martinez
Lia Rose Cattaneo
Blake Stafford
Latham & Watkins, LLP
Martin Cirkiel
Cirkiel & Associates, PC


*Counsel for Appellees:* Katie Elizabeth Payne
Donald Craig Wood
Walsh Gallegos Trevino Kyle Robinson PC

*Amicus Curiae*: Council of Parent Attorneys and Advocates, Inc., a non-profit organization.

Respectfully submitted this 4th day of May 2023.

By:

*/s/ Selene Almazan-Altobelli*
Selene Almazan-Altobelli
Council of Parent Attorneys and
Advocates
PO Box 6767
Towson, Maryland 21285

*/s/Ellen Marjorie Saideman*
ELLEN MARJORIE SAIDEMAN
Law Office of Ellen Saideman
7 Henry Drive
Barrington, RI 02806
(401) 258-7276
Attorneys for *Amicus Curiae*

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ........................................................i

TABLE OF CONTENTS ........................................................................iv

TABLE OF AUTHORITIES ....................................................................v

STATEMENT OF INTEREST OF *AMICUS CURIAE* ............................................1

SUMMARY OF ARGUMENT ................................................................4

ARGUMENT ..................................................................................6

    I.    THE ADA PROVIDES ROBUST ANTI-DISCRIMINATION REMEDIES THAT ARE DISTINCT FROM IDEA'S FAPE REQUIREMENT .....................................................6

    II.    CONGRESS HAS PROVIDED INDIVIDUALS WITH DISABILITIES WITH AN INDEPENDENT RIGHT TO EQUAL ACCESS UNDER ADA EVEN WHEN THE ADA AND IDEA CLAIMS BOTH ADDRESS THE ADEQUACY OF A STUDENT'S EDUCATION ......11

    III.    THE DISTRICT COURT ERRED IN DISMISSING THIS CASE BECAUSE THE PLAINTIFFS HAVE A STANDALONE ADA CLAIM ...........................................................13

CONCLUSION ................................................................................15

CERTIFICATE OF COMPLIANCE ......................................................15

CERTIFICATE OF CONFERENCE ......................................................16

CERTIFICATE OF SERVICE ..............................................................16

# TABLE OF AUTHORITIES

**Cases**

*Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*, 548 U.S. 291 (2006) ...............2

*Bd. of Educ. v. Tom F. ex rel. Gilbert F.*, 552 U.S. 1 (2007) ...................................2

*Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley,* 458 U.S. 176 (1982) ................................................................................................6, 9

*Draper v. Atlanta Indep. Sch. Sys.*, 518 F.3d 1275 (11th Cir. 2008) .......................6

*Endrew F. v. Douglas Cnty. Sch. Dist. RE-1*, 580 U.S. 386 (2017).....................2, 6

*Forest Grove Sch. Dist. v. T.A.*, 557 U.S. 230 (2009) .............................................2

*Fry v. Napoleon Cmty. Schs.,* 580 U.S. 154 (2017) ........................................*passim*

*K.I. v. Durham Pub. Sch. Bd. of Educ.*, 54 F. 4th 779 (4th Cir. 2022) ..................14

*K.M. v. Tustin*, No. 10-1011, 2011 WL 2633673 (C.D. Cal. July 5, 2011), *rev'd in part,* 725 F.3d 1088 (9th Cir. 2013) ..............................................8, 9, 13, 14

*Lartigue v. Northside Indep. Sch. Dist.*, No. 19-cv-00393, 2022 WL 4181011 (W.D. Tex. Sept. 9, 2022) ...............................................................13, 14

*Perez v. Sturgis Pub. Schs.*, 3 F.4th 236 (2021), *rev'd on other grounds*, 143 S. Ct. 859 (2023) ................................................................................................12

*Perez v. Sturgis Pub. Schs.,* 143 S. Ct. 859 (2023).........................................*passim*

*Miss. Univ. for Women v. Hogan*, 458 U.S. 718 (1982).........................................10

*Schaffer v. Weast*, 546 U.S. 49 (2005) ...................................................................2

*Smith v. Robinson*, 468 U.S. 992 (1984) ...............................................................11

*Tennessee v. Lane*, 541 U.S. 509 (2004) ...............................................................10

*United States v. Florida*, 938 F.3d 1221 (11th Cir. 2019), *reh'g en banc denied*, 21 F.4th 740 (11th Cir. 2021) ........................................................................10

*United States v. Georgia*, 546 U.S. 151 (2006) .....................................................10

*Winkelman v. Parma City Sch. Dist.*, 550 U.S. 516 (2007) ....................................2

**Statutes**

20 U.S.C. § 1400, *et seq.* ................................................................1

20 U.S.C. § 1401(3)(A)(i) ................................................................7

20 U.S.C. § 1401(3)(A)(ii) ...............................................................7

20 U.S.C. § 1415(*l*) .......................................................................7

29 U.S.C. § 794 (Section 504) .................................................*passim*

42 U.S.C. §1983 ...................................................................1, 11

42 U.S.C. § 12101, *et seq.* ....................................................1, 11

42 U.S.C. § 12101(b)(4) ..............................................................10

42 U.S.C. § 12102 (1)(A) ..............................................................7

42 U.S.C. § 12102(1)(B) ...............................................................7

42 U.S.C. § 12102(1)(C) ...............................................................7

42 U.S.C. § 12102(2)(A) ...............................................................7

42 U.S.C. § 12134 ........................................................................8

**Rules**

5th Cir. R. 26.1.1 .............................................................. ii

5th Cir. R. 28.2.1 ...............................................................i

Fed. R. App. P. 32(a)(7)(C) .........................................................15

**Regulations**

28 C.F.R. § 35.160 ......................................................................8

**Other Authorities**

U.S. Department of Education, Office for Civil Rights Data Collection, 2017-18 State and National Estimations, Student Enrollment ......................................8

## STATEMENT OF INTEREST OF AMICUS CURIAE[1]

The Council of Parent Attorneys and Advocates (COPAA) is a not-for-profit organization for parents of children with disabilities, their attorneys and advocates. COPAA believes effective educational programs for children with disabilities can only be developed and implemented with collaboration between parents and educators as equal parties. COPAA does not represent children but provides resources, training, and information for parents, advocates, and attorneys to assist in obtaining the free appropriate public education (FAPE) such children are entitled to under the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. § 1400, *et seq*.[2] Our attorney members represent children in civil rights matters. COPAA also supports individuals with disabilities, their parents, and advocates, in attempts to safeguard the civil rights guaranteed to those individuals under federal laws, including the Civil Rights Act of 1871, ch. 22, 17 Stat. 13 (codified as amended at 42 U.S.C. §1983), Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794

---

[1] Pursuant to Rule 29(a)(4)(E) of the Federal Rules of Appellate Procedure, *Amicus* state that: (i) there is no party or counsel for a party in the pending appeal who authored the Amicus brief in whole or in part; (ii) there is no party or counsel for a party in the pending appeal who contributed money that was intended to fund preparing or submitting the brief; and (iii) no person or entity contributed money that was intended to fund preparing or submitting the brief, other than *Amicus* and their members.

[2] The statute was originally named the Education of the Handicapped Act or EHA; it was renamed IDEA in 1990. *See Fry v. Napoleon Cmty. Schs.,* 580 U.S. 154, 160 n.1 (2017). For the sake of simplicity, we refer only to IDEA in this brief. *Id.*

1

(Section 504) and Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.* (ADA).

COPAA brings to the Court the unique perspective of parents and advocates for children with disabilities. COPAA has often filed as *amicus curiae* in the United States Supreme Court, including *Perez v. Sturgis Public Schools,* 143 S. Ct. 859 (2023); *Endrew F. v. Douglas County School District. RE-1*, 580 U.S. 386, 137 S. Ct. 988, 1000 (2017); *Fry v. Napoleon Community Schools*, 580 U.S. 154, 137 S. Ct. 743 (2017); and *Forest Grove School District v. T.A.*, 557 U.S. 230 (2009); *Winkelman v. Parma City Sch. Dist.*, 550 U.S. 516 (2007); *Bd. of Educ. v. Tom F. ex rel. Gilbert F.*, 552 U.S. 1 (2007); *Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*, 548 U.S. 291 (2006); and *Schaffer v. Weast*, 546 U.S. 49 (2005); and in numerous cases in the United States Courts of Appeal.

Many of these children experience significant challenges. Their success depends not only on the right to secure the IDEA's guarantee of a FAPE, but also upon the right to be free of unlawful discrimination in violation of the ADA, whether or not they receive special education. *Amicus* COPAA's interest in this case stems from its commitment to ensuring that students with disabilities are protected from unlawful discrimination and have access to protection from discrimination under the ADA, independent of their rights under IDEA to special education and related services.

2

Consent to file an *amicus curiae* brief in support of Appellants was sought from both Appellants and Appellees. Both Appellants and Appellees have provided consent to the filing of the brief of *Amicus Curiae*.

*Amicus* adopts the Statement of the Case contained in Appellant's Brief at 4-17.

## SUMMARY OF ARGUMENT

For students with disabilities, an umbrella of protections rooted in the Constitution exists that protects their access to education and its benefits as well as their Fourteenth Amendment right to be free from discrimination on the basis of their disabilities. The IDEA was enacted pursuant to Congress's power under the Spending Clause and "offers federal funds to States in exchange for a commitment to furnish a 'free appropriate public education' – more concisely known as a FAPE- to all children with certain physical or intellectual disabilities." *Fry*, 580 U.S. at 158. Thus, IDEA provides a "substantive right" to special education and related services. *Id.* Congress has also acted to protect students with disabilities from discrimination by enacting separate and distinct statutes, notably Section 504 and Title II of the ADA, that bar public schools from discriminating against students on account of their disabilities, regardless of whether such discrimination deprives the students of FAPE. These statutes provide valid, standalone legal claims to be protected from unlawful discrimination.

The District Court in this case erred in holding that, whenever the ADA claim shares some portion of the gravamen of an IDEA claim, there is no standalone claim for violation of the ADA. The District Court mixed up two different legal concepts, the first being when exhaustion of an IDEA claim is required as a prerequisite for

## SUMMARY OF ARGUMENT

For students with disabilities, an umbrella of protections rooted in the Constitution exists that protects their access to education and its benefits as well as their Fourteenth Amendment right to be free from discrimination on the basis of their disabilities. The IDEA was enacted pursuant to Congress's power under the Spending Clause and "offers federal funds to States in exchange for a commitment to furnish a 'free appropriate public education' – more concisely known as a FAPE- to all children with certain physical or intellectual disabilities." *Fry*, 580 U.S. at 158. Thus, IDEA provides a "substantive right" to special education and related services. *Id.* Congress has also acted to protect students with disabilities from discrimination by enacting separate and distinct statutes, notably Section 504 and Title II of the ADA, that bar public schools from discriminating against students on account of their disabilities, regardless of whether such discrimination deprives the students of FAPE. These statutes provide valid, standalone legal claims to be protected from unlawful discrimination.

The District Court in this case erred in holding that, whenever the ADA claim shares some portion of the gravamen of an IDEA claim, there is no standalone claim for violation of the ADA. The District Court mixed up two different legal concepts, the first being when exhaustion of an IDEA claim is required as a prerequisite for

bringing an ADA claim under 20 U.S.C. § 1415(*l*), and the second being whether an ADA claim is a standalone legal claim.

As the Supreme Court has recognized, the IDEA and ADA are fundamentally different statutes: "the IDEA guarantees individually tailored educational services, while Title II and §504 promise non-discriminatory access to public institutions." *Fry*, 580 U.S. at 170-71. Nonetheless, there may be "some overlap in coverage: The same conduct might violate all three statutes," with the result that "a plaintiff might seek relief for the denial of a FAPE under Title II and §504 as well as the IDEA." *Id* at 171. Thus, when a student asserts that the denial of non-discriminatory access to public education has deprived the student of an adequate education, the ADA and IDEA may overlap and § 1415(*l*) may require the student first pursue a due process hearing under IDEA for claims for prospective relief and any other relief also available under IDEA. Yet, the ADA claim for non-discriminatory access to public education remains a distinct legal claim with distinct legal elements, with the result that a student may lose the IDEA claim and nonetheless prevail on the ADA claim.

Thus, students with disabilities have standalone claims under Section 504 and the ADA to being free from unlawful disability discrimination, regardless of whether the discrimination deprives them of FAPE. The district court erred in holding that the plaintiffs did not have a standalone ADA claim. For that reason, this Court should reverse the district court.

# ARGUMENT

## I. THE ADA PROVIDES ROBUST ANTI-DISCRIMINATION REMEDIES THAT ARE DISTINCT FROM IDEA'S FAPE REQUIREMENT

IDEA and ADA are fundamentally different statutes. IDEA "establishes a substantive right to a 'free appropriate public education' for certain children with disabilities." *Endrew F.*, 580 U.S. at 390. The statute "represents an ambitious federal effort to promote the education of [disabled] children, and was passed in response to Congress' perception that a majority of [disabled students] in the United States 'were either totally excluded from schools or [were] sitting idly in regular classrooms awaiting the time when they were old enough to 'drop out.''" *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley,* 458 U.S. 176, 179 (1982) (quoting H.R. Rep. No. 94-332, p.2 (1975)). IDEA provides detailed requirements for the development of an appropriate Individualized Education Program (IEP) for every student and powerful procedural protections when school districts fail to follow statutory and regulatory directives. *See Endrew F.*, 580 U.S. at 391. IDEA provides for compensatory education as a remedy, *see Draper v. Atlanta Indep. Sch. Sys.*, 518 F.3d 1275 (11th Cir. 2008), but not a claim for compensatory damages. *See Perez*, 143 S. Ct. at 865.

In 1990, Congress passed the Americans with Disabilities Act, a landmark law protecting the rights of individuals with disabilities. Title II barred

discrimination by public entities, including school districts. Like Section 504, in Title II of the ADA, Congress prohibited discrimination by public agencies. Title II goes beyond Section 504 in applying to state and local government agencies regardless of whether they receive any federal funds. Because public schools receive federal funds and are public agencies, public schools are subject to the requirements of both Title II of the ADA and Section 504, in addition to IDEA.

The ADA's scope is much broader than the IDEA. IDEA protects only those students who both have a disability listed in the statute, 20 U.S.C. § 1401(3)(A)(i), and also "by reason thereof need[] special education and related services." 20 U.S.C. § 1401(3)(A)(ii). By contrast, the ADA applies to any individual who has "a physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102 (1)(A).[3]

Because learning is a major life activity under the ADA, 42 U.S.C. § 12102(2)(A), students who are eligible for special education and related services under IDEA typically meet the definition of disability under ADA. But while students with IEPs under IDEA are covered by ADA, the ADA also covers many students who do not need special education under IDEA. Some of these students may choose to have Section 504 plans; in the 2017-2018 school year, there were

---

[3] The statute also applies to individuals who have "a record of such an impairment" or are "regarded as having such an impairment." 42 U.S.C. § 12102(1)(B) & (C).

6,728,064 students served under IDEA and 1,380,146 who were on Section 504 plans without an IEP.[4]

The ADA also provides some very detailed protections not found in IDEA. In fact, the ADA includes a mandate to eliminate discrimination against individuals with disabilities, and it required the United States Department of Justice (DOJ) to promulgate regulations to implement the ADA to that end. 42 U.S.C. § 12134. Thus, while IDEA may set the "basic floor of opportunity," the ADA may require more, as it mandates equal access for students with disabilities. For example, the ADA regulations specifically require public entities to "take appropriate steps to ensure that communications with applicants, participants, members of the public, and companions with disabilities are as effective as communications with others." 28 C.F.R. § 35.160.

*K.M. v. Tustin*, No. 10-1011, 2011 WL 2633673 (C.D. Cal. July 5, 2011), *rev'd in part,* 725 F.3d 1088 (9th Cir. 2013) provides a good example of the ADA's imposition of a higher obligation than IDEA. In that case, a student who was deaf sought Communication Access Real-time Translation services (CART)—an accommodation that provides word-for-word transcription—to enable her to follow

---

4 U.S. Department of Education, Office for Civil Rights Data Collection, 2017-18 State and National Estimations, Student Enrollment, SCH 005 Total, https://ocrdata.ed.gov/estimations/2017-2018

classroom instruction. The school district in that case refused to provide her with CART and instead offered her different supports which did not provide her with the type of word-for-word transcription she felt she needed to have equal access to instruction.

In *Rowley,* the Supreme Court held that a deaf student who was achieving "better than the average child in her class and [was] advancing easily from grade to grade" received a FAPE even though "'she understands considerably less of what goes on in class than she could if she were not deaf.'" 458 U.S. at 185, 210-11. Under the *Rowley* analysis applicable to the student's IDEA claim, the district court found that the school district's failure to provide the CART services did not deny K.M. a FAPE. 2011 WL 2633673 at *12.

However, the court of appeals reversed because the ADA and DOJ's implementing regulations regarding effective communications provide a completely different legal claim. The ADA regulations require that communication be made equally accessible to people with communication disabilities, even if the student does not require equal access to receive a FAPE under IDEA as defined by *Rowley. See, e.g., K.M.*, 725 F.3d at 1098.

In *K.M.*, the Ninth Circuit recognized that IDEA sets the "floor of access to education," while Title II and its implementing regulations "require public entities to take steps towards making existing services not just accessible, but *equally*

accessible to people with communication disabilities." *Id.* at 1097. The court did "not find in either statute an indication that Congress intended the statutes to interact in a mechanical fashion in the school context, automatically pretermitting any Title II claim where a school's IDEA obligation is satisfied." *Id.* at 1092.

Thus, while IDEA may set the "basic floor of opportunity," in schools, the ADA may require more as it often protects other rights and is not bound within a federal fund contract. This is true as the ADA arises under the Fourteenth Amendment. *Tennessee v. Lane*, 541 U.S. 509 (2004); *see also United States v. Florida*, 938 F.3d 1221, 1247 (11th Cir. 2019), *reh'g en banc denied*, 21 F.4th 730 (11th Cir. 2021); 42 U.S.C. § 12101(b)(4) (purpose of ADA is to "invoke the sweep of congressional authority, including the power to enforce the Fourteenth Amendment and to regulate commerce, in order to address the major areas of discrimination faced day-to-day by people with disabilities"). Congress may proscribe a broad range of conduct under the Fourteenth Amendment, *Miss. Univ. for Women v. Hogan*, 458 U.S. 718, 732 (1982), including damage claims for relief under the ADA. *United States v. Georgia*, 546 U.S. 151 (2006). Further, the ADA provides individuals with the ability to pursue damages to make victims of discrimination whole, and also to disincentivize discrimination at an institutional level.

## II. CONGRESS HAS PROVIDED INDIVIDUALS WITH DISABILITIES WITH AN INDEPENDENT RIGHT TO EQUAL ACCESS UNDER ADA EVEN WHEN THE ADA AND IDEA CLAIMS BOTH ADDRESS THE ADEQUACY OF A STUDENT'S EDUCATION

The Supreme Court has addressed the relationship between IDEA and federal non-discrimination laws in three cases. In the first case, *Smith v. Robinson*, 468 U.S. 992, 1009 (1984), the Court held that Congress intended that IDEA "be the exclusive avenue through which a plaintiff may assert an equal protection claim to a publicly financed special education." Therefore, the Court held that claims under Section 504 and Section 1983 were simply not available to students asserting a right to a free appropriate public education under IDEA. *Id*. at 1013, 1021.

But Congress disagreed. As the Supreme Court observed in *Fry*, "Congress was quick to respond" by "overturn[ing] *Smith*'s preclusion of non-IDEA claims while also adding a carefully defined exhaustion requirement." *Fry*, 580 U.S. at 161. Congress enacted the Handicapped Children's Protection Act (HCPA) of 1986, P.L. 99-372, 100 Stat. 796, amending Section 615 of IDEA to establish rights to attorney fees and an exhaustion provision (now at 20 U.S.C. § 1415(*l*)) for claims under other federal laws protecting children with disabilities. HCPA's exhaustion requirement, as amended, reads in full:

> Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990 [42 U.S.C.A. § 12101 et seq.], title V of the Rehabilitation Act of 1973 [29 U.S.C.A. § 791 et seq.], or other Federal laws protecting the rights of children with disabilities, except that before the filing

of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsections (f) and (g) shall be exhausted to the same extent as would be required had the action been brought under this subchapter.

20 U.S.C. § 1415(*l*) (alterations in original).

The Court noted that § 1415(*l*)'s first clause "'reaffirm[s] the viability' of federal statutes like the ADA or Rehabilitation Act 'as separate vehicles,' no less integral than the IDEA, 'for ensuring the rights of [disabled] children.'" 580 U.S. at 161 (quoting H.R. Rep. 99-296, p. 4 (1985)). The Court then noted that the second clause simply imposed a limit that, when the plaintiff is seeking "relief that is also available under" the IDEA, the plaintiff must "first exhaust the IDEA's administrative procedures." *Id*. That exhaustion requirement does not transmute the ADA claim into an IDEA claim; the ADA claim remains a separate vehicle for enforcing a different right, the right to be free of unlawful discrimination.

Recently, the Supreme Court again considered the relationship between ADA and IDEA in *Perez*. In that case, the Sixth Circuit had held that the gravamen of the student's claim was a denial of FAPE, the school's failure "to provide him with the educational services he needed" and affirmed dismissal of the ADA claim. *Perez v. Sturgis Pub. Schs.*, 3 F.4th 236, 241 (2021), *rev'd on other grounds*, 143 S. Ct. 859 (2023). That holding was not appealed. Nonetheless, the Court reversed, holding that the exhaustion requirement did not apply because the plaintiffs sought only

compensatory damages. The Court said that Section 1415(*l*) "applies *only* to suits that 'see[k] relief . . . also available under' IDEA." *Perez*, 143 S. Ct. at 864 (emphasis in original). "And that condition simply is not met in situations like ours, where a plaintiff brings a suit under another federal law for compensatory damages – a form of relief everyone agrees IDEA does not provide." *Id*.

Thus, the Court's decisions in both *Fry* and *Perez* make clear that, even if the ADA and IDEA claims may overlap in that the gravamen of the complaint is the adequacy of education for both claims, the ADA claim is an independent legal claim.

## III. THE DISTRICT COURT ERRED IN DISMISSING THIS CASE BECAUSE THE PLAINTIFFS HAVE A STANDALONE ADA CLAIM

Here, Lartigue, like K.M. in the Ninth Circuit, was a student with a hearing disability who requested reasonable accommodations to obtain effective communication, a right to equal access guaranteed by the ADA and its implementing regulations. Lartigue, like K.M., lost her IDEA claim. Because the legal standard for providing effective communication to students with hearing disabilities is more demanding under the ADA than under IDEA, as ADA requires equal access, a student may well have a winning ADA claim for effective communication while losing an IDEA claim. This is because a student may be able to make adequate educational progress sufficient for a FAPE under IDEA but still be denied equal access to the education required by the ADA.

13

Lartigue, like K.M., filed an ADA claim. The district court held that the fact that the gravamen of Lartigue's complaint was a denial of FAPE precluded an ADA effective communication claim. *Lartigue v. Northside Indep. Sch. Dist.*, No. 19-cv-00393, 2022 WL 4181011, at *4 (W.D. Tex. Sept. 9, 2022). This holding is entirely inconsistent with the Supreme Court's decisions in both *Fry* and *Perez*. *Fry* and *Perez* acknowledged that the ADA claim was a "separate vehicle" for enforcing a student's rights to non-discrimination. *Fry*, 580 U.S. at 161; *Perez*, 143 S. Ct. at 863 (holding that nothing in Section 1415(*l*) bars ADA effective communication claim for damages).

The IDEA exhaustion provision, 20 U.S.C. § 1415(*l*), is a procedural rule that sets forth the sequence for bringing non-IDEA claims that share the gravamen of FAPE with IDEA claims. *See K.I. v. Durham Pub. Sch. Bd. of Educ.*, 54 F. 4th 779, 791 (4th Cir. 2022) (holding provision is a claims-processing rule). That provision does not address the legal merits of the claim. It does not limit the ADA or other non-IDEA claim on the merits to IDEA's legal standards. *Fry* and *Perez* both recognized that the ADA and other non-IDEA statutes remain separate vehicles for enforcing different rights, the right to equal access and freedom from unlawful discrimination. Thus, a student who requires CART for equal access may well prevail on an ADA claim while losing an IDEA claim.

# CONCLUSION

The judgment of the district court should be reversed.

Respectfully submitted,

<u>/s/ Ellen M. Saideman</u>
ELLEN MARJORIE SAIDEMAN
LAW OFFICE OF ELLEN
SAIDEMAN
7 Henry Drive
Barrington, RI 02806
(401) 258-7276
ESAIDEMAN@YAHOO.COM

<u>/s/Selene Almazan-Altobelli</u>
SELENE ALMAZAN-
ALTOBELLI
*Counsel of Record*
COUNCIL OF PARENT
ATTORNEYS AND
ADVOCATES
P.O. BOX 6767
TOWSON, MD 21285
(844) 426-7224
SELENE@COPAA.ORG

# CERTIFICATION OF COMPLIANCE PURSUANT TO
# FED. R. APP. 32(a)(7)(C) AND CIRCUIT COURT RULE 32-1

I certify that, pursuant to Fed. R. App. P. 32(a)(7)(C), the attached amicus brief is proportionately spaced, has a typeface of 14 points and contains 3,228 words.

Dated: May 4, 2023

<u>/s/Selene Almazan-Altobelli</u>
Selene Almazan-Altobelli

## CERTIFICATE OF CONFERENCE

In accordance with 5th Cir. R. 27.4, the undersigned certifies that consent to file an *amicus curiae* brief was sought from parties' counsel. Counsel for Appellants and Appellees have consented to filing of this brief.


*/s/Selene Almazan-Altobelli*
Selene Almazan-Altobelli


## CERTIFICATE OF SERVICE

I certify that on the foregoing document was served on May 4, 2023 on all parties or their counsel of record through the CM/ECF if they are registered users


*/s/Selene Almazan-Altobelli*
Selene Almazan-Altobelli